**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2512
_____

KIM YAZUJIAN,
                    Appellant

v.

PETSMART; JOHN DOES 1-10, fictitiously named;
ABC COMPANIES 1-10, fictitiously named
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-13-cv-06202)
District Judge:  Honorable William H. Walls

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 9, 2018

Before:  CHAGARES, VANASKIE, and FISHER, Circuit Judges.

(Opinion Filed: April 17, 2018)

_____

OPINION*
_____

_____

   * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

Plaintiff Kim Yazujian brought this action for negligence against the defendant PetSmart, Inc., arising from an incident in 2012 in which she slipped and fell in a PetSmart store. The case proceeded to trial, and the jury returned a verdict in favor of PetSmart. Yazujian appeals, seeking a new trial. She contends that the District Court abused its discretion by excluding Yazujian's expert witness, Robert Loderstedt, from testifying. We disagree, and so we will affirm.

I.[1]

We write solely for the parties and therefore recite only the facts necessary to our disposition. On January 21, 2012, Yazujian slipped on a puddle of water and fell inside a PetSmart store. She brought a negligence lawsuit against PetSmart seeking compensation for her injuries. A jury trial was held in June 2017. In the middle of trial, outside of the presence of the jury, a hearing was held to determine whether Yazujian's purported retail management and store safety expert, Robert Loderstedt, was qualified to testify pursuant to Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). The District Court found that Loderstedt was not qualified as an expert in retail safety, that his methodology was flawed, and that the jury would not benefit from his testimony. The District Court precluded him from testifying. The trial then concluded, and the jury returned a verdict in favor of PetSmart. This timely appeal followed.

---

[1] Because the jury returned a verdict in the defendants' favor, we set forth the facts in the light most favorable to them. See Watson v. Se. Pa. Transp. Auth., 207 F.3d 207, 211 n.2 (3d Cir. 2000).

2

II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review a District Court's decision to admit or exclude expert evidence under the Daubert standard for abuse of discretion.  Gen. Elec. Co. v. Joiner, 522 U.S. 136, 143 (1997).

III.

Yazujian argues that the District Court abused its discretion by precluding Loderstedt from testifying.  She contends that he was qualified as a retail safety expert to opine on the industry best practices when dealing with inclement weather.  She argues that Loderstedt's experience and training more than qualified him to testify on this matter.  Yazujian also contends that his methodology was sound and that this testimony would have been outside the commonsense knowledge of the average juror and should have been admitted for that reason.  We disagree.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witnesses.  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

We have identified the following non-exhaustive factors to be taken into consideration when evaluating the reliability of a particular methodology:

3

(1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Elcock v. Kmart Corp., 233 F.3d 734, 745-46 (3d Cir. 2000) (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 n.8 (3d Cir. 1994)).

The Supreme Court's opinion in Daubert makes clear that "the language of Rule 702 requiring the expert to testify to scientific knowledge means that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" In re Paoli R.R. Yard PCB Litig., 35 F.3d at 742 (quoting Daubert, 509 U.S. at 590). Daubert applies to the other expert matters described in Rule 702, even when the proposed expert is offering non-scientific, but specialized, testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999).

Daubert requires an inquiry into the reliability and relevance of the proposed expert testimony. See United States v. Ford, 481 F.3d 215, 218 (3d Cir. 2007). To be admissible, expert testimony must be connected to the inquiry at hand. See Daubert, 509 U.S. at 591-92. When the "factual basis, data, principles, methods, or their application" of the proposed expert testimony "are called sufficiently into question," then "the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" Kumho Tire, 526 U.S. at 149 (quoting Daubert, 509 U.S. at 592).

After careful review of the record, we conclude that the District Court did not abuse its discretion in declining to permit Loderstedt to testify as an expert witness in

4

retail safety. Loderstedt had no academic background in retail safety, no formal training in retail management or safety, and no retail work experience other than a job as a stock clerk more than 50 years prior. Instead, he claimed that his specialized knowledge and expertise were based on his review of over one hundred retail store manuals, and his time training under William Julio — a person who he claimed was an expert in retail safety — which included visits to retail stores where he would walk in and look around.[2]

Loderstedt conceded that there are no formal industry standards in the area of retail safety. Instead, he sought to offer an opinion on his view of what the industry best practices were, based on a review of unspecified retail manuals. He provided no factual basis for why these manuals were relevant, while others were not. He conceded that his methods were not subject to peer review. There was no evidence that this method was tested, accepted, or used by other experts in the field of retail safety. See Kumho Tire, 526 U.S. at 151. Critically, he did not even review the safety manual or policies of the PetSmart store at issue in this case. Accordingly, we agree with the District Court that Loderstedt was not qualified as an expert in retail safety, and that his testimony was the product of methods and principles that were not reliable. Loderstedt's testimony would have constituted no more than "subjective belief or unsupported speculation," In re Paoli R.R. Yard PCB Litig., 35 F.3d at 742, and would not assist the jury in understanding or determining a fact in issue, as required under Rule 702 and Daubert.[3]

---

[2] Other than Loderstedt's testimony that Julio "has opined in 750 cases" and "has written a book on safety," there was no evidence of Julio's qualifications or expertise.

[3] Yazujian also contends that the District Court erred by engaging in excessive questioning of Loderstedt at the Daubert hearing. She argues that this implies that the

IV.

For the foregoing reasons, the judgment of the District Court will be affirmed.

---

District Court was biased against permitting Loderstedt to offer expert testimony. Yazujian
Br. 13-14. We disagree. A District Court has "considerable leeway in deciding in a
particular case how to go about determining whether particular expert testimony is reliable."
Kumho Tire, 526 U.S. at 152. Yazujian has identified no authority in support of her
position. The District Court did not abuse its discretion in its questioning of the expert.